UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:17-cr-175-TWP-TAB-02 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| GENERAL JAMES HUGHES, IV | (COMPASSIONATE RELEASE) |

Upon motions of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motions are:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:17-cr-00175-TWP-TAB-2 |
| GENERAL JAMES HUGHES, IV, | ) ) ) |
| Defendant. | ) |

### ORDER

This matter is before the Court on *pro se* Defendant General James Hughes, IV ("Hughes") Motions for Sentence Reduction under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). (Dkts. 116, 139, 141.)[1] He seeks compassionate release because of risks associated with the Coronavirus pandemic. For the reasons explained below, his Motions are **denied**.

### I.  BACKGROUND

In September 2017, Hughes was charged by Indictment with one count of attempted robbery of mail, money, or other property of the United States, in violation of 18 U.S.C. §§ 2114(a) and 2. (Dkt. 25.) In April 2018, he entered into an amended plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). (Dkt. 76.) In agreeing to plead guilty to the count with which he had been charged, Hughes stipulated to the following facts:

---

[1] Hughes has submitted multiple filings to the Court. In some he asks for compassionate release, suggesting that he wishes to have his sentence reduced to time served so that he can be released immediately. (*See, e.g.*, Dkt. 148.) In at least one document, however, he states that he is not asking to be released immediately, but rather that he is asking the Court to reduce his sentence by 90 days up to 12 months. (Dkt. 136 at 4.) As a result, the Court understands Hughes to be asking for a sentence reduction of indeterminate length, ranging from a 90-day reduction to a reduction to time served that would result in his immediate release.

In July 2017, a United States Postal Service postal carrier was delivering mail along his route in Muncie, Indiana. *Id.* at 7. Hughes and his two co-defendants believed that the postal carrier stole packages of marijuana that had been shipped to Indiana through the mail and were destined for addresses on the carrier's route. *Id.* Hughes' co-defendant positioned his car in front of the postal carrier's vehicle. *Id.* Hughes and his co-defendants exited the car and approached the postal carrier's vehicle. *Id.* Hughes' co-defendant was armed with what the postal carrier believed was a pistol; the co-defendant threatened the postal carrier and brandished the pistol. *Id.* The co-defendant made statements to the effect of, "Give me my shit . . . I know you got it . . we know where you live and where you work." *Id.* Hughes obtained the postal carrier's cellular telephone number. *Id.* The postal carrier told the robbers that he did not know where their packages were, and the robbers left. *Id.* Soon after, the postal carrier received two threatening telephone calls from the robbers, asking him to return the missing packages. *Id.*

In August 2018, the Court accepted Hughes' guilty plea and sentenced him to 70 months of incarceration and 3 years of supervised release. (Dkts. 110, 111.)

Hughes is 30 years old. He is currently incarcerated at the Federal Correctional Institution ("FCI Beckley") in Beaver, West Virginia. As of November 19, 2020, the Bureau of Prisons ("BOP") reports that 51 inmates and 2 staff members at FCI Beckley have active cases of COVID-19; it also reports that 22 inmates and 6 staff members at FCI Beckley have recovered from the virus. *See* https://www.bop.gov/coronavirus/ (last visited Nov. 19, 2020). Hughes represents that he has served more than 3 years of his sentence. (Dkt. 41 at 3.) The BOP lists Hughes' projected release date as July 4, 2022.

On April 28, 2020, Hughes filed a *pro se* motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Dkt. 116.) The Court appointed counsel to represent Hughes, (Dkt. 119),

3

and counsel appeared on his behalf, (Dkt. 120.)  After counsel appeared, the Court ordered the parties to file notices addressing whether Hughes had exhausted his administrative remedies as required by § 3582(c)(1)(A).  (Dkt. 122.)  On June 24, 2020, the Government conceded that the Court could hear the merits of Hughes' Motion.  (Dkt. 129.)  In July 2020, the Court allowed appointed counsel to withdraw his appearance on Hughes' behalf.  (Dkts. 132, 134.)

After counsel withdrew, the Court informed Hughes that he would be required to pursue his compassionate release motion *pro se* unless he obtained private counsel.  (Dkt. 135.)  It concluded that Hughes' *pro se* motion lacked sufficient information to show that he was entitled to compassionate release and directed him to complete and return the Court's form compassionate release motion.  *Id.*  Before Hughes received that Order, he mailed the Court a letter that was filed on July 15, 2020.  (Dkt. 136.)  Again, the Court informed Hughes that he would need to complete the Court's form compassionate release motion.  (Dkt. 137.)  Before Hughes received a copy of that Order, he mailed the Court another letter, (Dkt. 138), and an Amended Motion for Compassionate Release, (Dkt. 139).  On August 3, 2020, the Court entered another Order reiterating that Hughes must supplement his previously filed motions by returning and completing the Court's form compassionate release motion.  (Dkt. 140.)

On August 4, 2020, Hughes completed and returned the Court's form compassionate release motion.  (Dkt. 141.)  The Government responded in opposition on August 11, 2020.  (Dkt. 142.)  On August 24, 2020, the Court received a letter from Hughes' mother discussing his medical conditions and providing medical records substantiating those conditions. (Dkt. 143.)  The Court offered the Government an opportunity to respond to the newly filed medical records, (Dkt. 144), but the Government declined to file a supplemental response, (Dkt. 146).  On August 26, 2020,

Hughes filed his reply. (Dkt. 145.) Hughes filed another letter with the Court on November 16, 2020. (Dkt. 148.) Thus, his motions for compassionate release are ripe for review.

## II. DISCUSSION

Hughes seeks a sentence reduction based on "extraordinary and compelling reasons" as set forth in 18 U.S.C. § 3582(c)(1)(A)(i). (Dkts. 116, 139, 141.) In his initial motion, Hughes stated that he was seeking compassionate release because of the COVID-19 virus. (Dkt. 116 at 2.) He explained that he was "suffering PTSD" as a result of the COVID-19 pandemic and that he was suffering from stress and anxiety because he was worried that he would not get to see his loved ones again. *Id.* He noted that he feared contracting COVID-19 because he had the flu in January 2020 and was provided "the least treatment possible," making it a "horrible experience." *Id.* He also noted that he had completed more than half of his sentence. *Id.*

In his Amended Motion, (Dkt. 139), and the two letters he sent the Court in July 2020, (Dkts. 136 and 138), Hughes reiterated his fears about contracting COVID-19 and the stress, anxiety, and depression he was facing in the wake of the pandemic. He reported that his facility had now experienced positive COVID-19 tests and that cases were increasing in West Virginia, where he is incarcerated. (Dkts. 136, 138, 139.) He also explained that he is legally blind and has been on a waiting list for treatment since he began his incarceration. (Dkt. 139.) The waiting list is years long, and he did not receive treatment before the pandemic began. (Dkt. 138.) Because of the pandemic, he has been unable to get necessary treatment. *Id.* As a result, his vision is deteriorating. (Dkt. 136 at 3.) He also added that he is not violent, is not a threat to the community, has been incident-free during his incarceration, has completed many programs, and has earned a forklift operator license. *Id.*

When Hughes submitted the compassionate release form, he checked boxes indicating that he has a "serious physical or medical condition[] that substantially diminishes [his] ability to provide self-care within the environment of a correctional facility, from which [he is] not expected to recover" and a "serious functional or cognitive impairment that substantially diminishes [his] ability to provide self-care within the environment of a correctional facility, from which [he is] not expected to recover." (Dkt. 141 at 2.) He explained that he has been legally blind since birth and requires special assistance, such as eyeglasses, surgeries, and routine check-ups. *Id.* at 4. He reiterated that he has been unable to get treatment since the pandemic started and that his vision is becoming very poor, which causes him to suffer migraines. *Id.* When asked if he required durable medical equipment (such as a wheelchair or oxygen), he reported only that he needs eyeglasses. *Id.* at 6. When asked if he needs assistance with self-care (such as assistance with bathing, walking, or toileting), or assisted living, he answered, "No." *Id.* Likewise, in his reply, Hughes stated that he needs medical attention immediately and that, if it is not provided, he "can lose [his] vision and then will be unable to provide self-care." (Dkt. 145 at 1.) He admitted that he currently does not require assistance with bathing, walking, or toileting, but stated that he will need such assistance if he goes blind and loses the majority of his vision. *Id.*

In his reply, Hughes again reiterated that he has been unable to obtain necessary medical treatment due to the pandemic and that his facility has reported positive COVID-19 tests. *Id.* at 1-2. He also argued that he is not a danger to another person or the community because he has no history of violence and did not threaten the postal carrier in the crimes at issue in this case. *Id.* at 2. He explained that he has changed and that he has been dedicated to changing his life while incarcerated. *Id.* He also argued that the sentencing factors in 18 U.S.C. § 3553(a) favor release. *Id.*

In August 2020, Hughes' mother submitted medical records showing that Hughes has suffered from significant vision problems since he was a child. (Dkt. 143.)

Finally, in his November letter, Hughes again reiterated that he is seeking compassionate release because his vision is bad and has gotten worse. (Dkt. 148.) He explained that he still has not been able to get treatment because of the pandemic and the spread of COVID-19 at his facility. *Id*. He stated that his vision is blurry most of the time, he sometimes sees black dots, and he gets migraines because he must strain to see. *Id.* He reported that he feels anxiety because he feels that he is losing his vision. *Id.*

The Government contends that Hughes has not shown an extraordinary and compelling reason warranting a sentence reduction. (Dkt. 142 at 7-8.) It also argues that he is a danger to the community, emphasizing the nature of his offense, his prior convictions for dealing in cocaine, his history of substance abuse, pending supervision violations, and his history of failing to appear in criminal cases. *Id.* at 9-10. Finally, it argues that the sentencing factors in 18 U.S.C. § 3553(a) do not favor a sentence reduction because releasing him after less than 4 years would not be consistent with the need to provide just punishment and protect the public and because releasing him now would create an unwarranted sentencing disparity with his co-defendants. *Id.* at 10–11.

Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* 132 Stat. at 5239 (First Step Act § 603(b)). Section § 3582(c) now provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

7

>   defendant's facility,[2] whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>   **(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c), contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether

---

[2] The Government does not contest that Hughes has exhausted his administrative remedies. (Dkt. 142 at 4 n.3.)

8

"[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether Hughes is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."[3]

When Hughes submitted his form compassionate release motion, he checked boxes indicating that Subsection (A) applies to him. (Dkt. 141 at 2.) While Hughes claims to be legally

---

[3] The policy statement provides that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons." U.S.S.G. Manual §1B1.13, Application Note 4. Likewise, the catchall provision provides, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D). This policy statement has not been amended since the passage of the First Step Act. Insofar as it states that only the Director of the BOP can bring a motion under § 3582(c)(1)(A), it is directly contradicted by the amended statutory text. This discrepancy has led some courts to conclude that the Commission does not have a policy position applicable to motions under § 3582(c)(1)(A)(i) and that they have discretion to determine what constitutes an "extraordinary and compelling reason" on a case-by-case basis, looking to the policy statement as helpful, but not dispositive. *See, e.g.*, *United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (collecting cases); *see also United States v. Haynes*, No. 93 CF 1043 (RJD), 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases). Other courts have held that they must follow the policy statement as it stands and, thus, that the Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision. *See, e.g.*, *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349,

blind and there is evidence showing that he has significant vision problems, there is no evidence that Hughes is substantially limited in his ability to provide self-care in the environment of a correctional facility—which is required to qualify under Subsection (A). To the contrary, when asked if he required assistance with self-care or assisted living, he answered, "No." *Id.* at 6. Likewise, in his reply, he confirmed that he is not currently limited in self-care, but rather that he fears being limited in self-care if he loses his sight. (Dkt. 145 at 1.) Thus, the Court concludes that Subsection (A) does not apply.

Accordingly, the question is whether the catchall provision for extraordinary and compelling reasons embodied in Subsection (D) applies in this case. The Court concludes that it does not.

The risk that Hughes faces from the COVID-19 pandemic is not an extraordinary and compelling reason to release him. While the Court sympathizes with Hughes' fear of contracting the virus and the stress and anxiety he faces as the pandemic unfolds, the general threat of contracting COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Jackson*, No. 1:18-cr-314-RLY-MJD01, Dkt. 33 (S.D. Ind. Aug. 12, 2020) (concluding that the general threat of contracting COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction).

---

at *2–4 (S.D. Ala. Aug. 13, 2019). The Court need not resolve that debate, though, because Hughes' motions are due to be denied even if the Court assumes that the policy statement is not binding and that it has the discretion to determine what constitutes an "extraordinary and compelling reason" for a sentence reduction.

And, while Hughes suffers from significant vision issues, those issues do not place him at increased risk of suffering severe symptoms if he contracts COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#heart-conditions (last visited Nov. 19, 2020).[4]  This Court has consistently denied motions for compassionate release from defendants who are not at an increased risk of developing severe symptoms if they contract COVID-19, even when they are incarcerated in a "hotspot" for COVID-19 infections.  *See United States v. Dyson*, 2020 WL 3440335, at *3 (S.D. Ind. June 22, 2020) (collecting cases).

It appears that the real crux of Hughes' motions is that his vision is deteriorating and that he has not been able to receive necessary treatment because of the pandemic.  (Dkts. 136, 139, 141.)  The Court sympathizes with Hughes' fears about losing his vision.  Hughes' complaints about the medical care he is receiving suggest that he may wish to consider filing an action under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), or a claim for injunctive relief.  Any such action or claim should be filed in the district where he is confined.  But, because an alternative avenue of relief exists, his complaints about his failure to receive medical treatment do not constitute an extraordinary and compelling reason warranting a sentence reduction.

Finally, Hughes is to be commended for having good conduct, for completing multiple education programs, and for earning his forklift operator license.  But rehabilitation alone cannot be an extraordinary and compelling reason warranting a sentence reduction.  *See* 28 U.S.C. § 994(t).

---

[4] The Court does not understand Hughes' references to "PTSD," "anxiety," and "depression" to mean that he has been formally diagnosed with such conditions.  Rather, it understands them as a layperson's description of the stress he is experiencing from being incarcerated during the pandemic.  Regardless, such mental health conditions are not conditions that increase the risk of severe symptoms from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#heart-conditions (last visited Nov. 19, 2020).

11

Because the Court has determined that Hughes has not shown extraordinary and compelling reasons to justify his release, whether Hughes is a danger to the community and whether the § 3553(a) factors weigh in favor of his release need not be discussed at length. Hughes and his co-defendants attempted to rob a postal carrier because they believed he had intercepted packages containing marijuana. While Hughes claims not to have brandished a firearm or to have threatened anyone, (*see* Dkt. 145), his co-defendant did—emphasizing the danger of the crime. Hughes also has two previous felony convictions for dealing cocaine. (Dkt. 87 at 7–8.) He committed the second felony offense while on probation for the first offense, thereby leading to the revocation of his probation in that case. *Id.* at 7. Probation violations were also filed against him in the second case. *Id.* at 8. In addition, the United States has filed evidence showing that Hughes has a history of failing to appear for court hearings. Dkt. 142-1. Finally, Hughes was sentenced at the low end of his guidelines range, (*see* Dkt. 87 at 13 (showing guidelines range of 70 to 87 months)), and still has 18 months remaining on his sentence. Even Hughes admits that statistics show that he is highly likely to reoffend upon release. (*See* Dkt. 145 at 2.) The Court appreciates Hughes' dedication to improving himself while incarcerated and his commitment to changing his life, but it cannot find at this time that he is no longer a danger to the community or that the § 3553(a) factors favor a sentence reduction.

### III. CONCLUSION

For the reasons stated above, Hughes' Motions for Compassionate Release, (Dkts. [116], [139], and [141]) are **DENIED**. The **Clerk** is **directed** to enclose a prisoner civil rights complaint form with Hughes' copy of this Order.

**SO ORDERED.**

Date: 11/23/2020

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

General James Hughes, IV, #21782-040
FCI Beckley
Federal Correctional Institution
P.O. Box 350
Beaver, West Virginia  25813

Jeffrey D. Preston
UNITED STATES ATTORNEY'S OFFICE
jeffrey.preston@usdoj.gov